[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a negligence action in which the plaintiff seeks damages for personal injuries allegedly sustained as a result of a motor vehicle accident on June 6, 1991. After the defendant agreed to withdraw its jury trial election and the plaintiff, appearing pro se also agreed to forego a jury trial, this matter was tried to the court on February 22 and 23, 1999. The court enters the following findings of fact and conclusions:
FINDINGS OF FACT
1. On June 6, 1991, the plaintiff Michael Perrelli ["Perrelli"] had left work at approximately 4:00 p. m. and was traveling on Saw Mill Road in West Haven in the right hand lane of two lanes. There was a Shell Gas Station to his right and Perrelli observed traffic stopped ahead of him to his left in the left hand lane. Perrelli was traveling at roughly 35 miles per hour.
2. On the same date, the defendant David Duffield ["Duffield"] was traveling in the traffic stopped ahead of him to his left in the left hand lane. Perrelli was traveling at roughly 35 miles per hour.
3. A driver traveling in the opposite left hand lane stopped and waved Duffield across. Duffield proceeded to turn left on the other driver's indication, waving his thanks to that driver as he did so.
4. Duffield crossed the left lane and entered Perrelli's lane of travel as Perrelli was proceeding with a green light in his favor. There was a substantial impact.
5. Perrelli did not observe Duffield's vehicle until it was coming into his lane and did not have time to apply his brakes. The impact sent Perrelli's vehicle into the driveway of the Shell CT Page 2584 Station and spun Duffield's vehicle. There was major front end damage to Perrelli's vehicle.
6. The West Haven Fire Department and New Haven Ambulance Service provided emergency service to Perrelli at the scene. Perrelli was transported by ambulance to the emergency room of the Yale-New Haven Hospital.
7. On arrival at the emergency room, Perrelli reported that he was unsure whether he lost consciousness and complained of pain in his head, neck and chest. He had a small laceration over his left eye. He was treated and released.
8. Perrelli remained symptomatic, experiencing headaches, neck and low backpain, discomfort from lacerations and wrist and knee pain and sought treatment on June 10, 1991 from Dr. Michael Mankus of Family Practice and Internal Medicine, P.C. ["Mankus"]. Perrelli had not treated with Mankus before and was recommended to him by his sister-in law.
9. Mankus diagnosed Perrelli with cervical musculoligamentous sprain, lumbosacral musculoligamentous sprain, multiple lacerations, bilateral wrist sprain, bilateral ankle sprain and post traumatic syndrome. Mankus prescribed a course of physical therapy and anti-inflammatory and analgesic medications and found Perrelli unable to return to work.
10. On June 6, 1991, Perrelli was working a 40 hour week at Polar Cooler Manufacturing in West Haven, earning $12 an hour. He had started that job some time in 1990.
11. On July 9, 1991, Mankus released Perrelli to return to light duty work. On either July 10 or 11, 1991, Perrelli attempted to return to work but experienced low back pain, was unable to work and was sent home. Perrelli did not return to work at Polar Cooler thereafter and subsequently lost his job. On July 16, 1991, Perrelli returned to Mankus complaining of neck and back pain. Mankus advised him to remain out of work. Medications and physical therapy were continued.
12. On September 17, 1991, Perrelli returned to Mankus complaining of headaches, neck pain and back pain. As a result of a complaint of persistent headache, Mankus ordered a CT scan to evaluate the headaches. CT Page 2585
13. On September 19, 1991, a CT scan of the head was performed by Dr. Craig Walden. It was suspicious for an anterior communicating artery aneurysm. An MRI done on October 3, 1991 confirmed a finding of a normal berry aneurysm, a congenital condition, which was completely incidental to the motor vehicle accident. Given the size and location of the aneurysm, it was recommended that Perrelli undergo a craniotomy and clipping of the aneurysm and he elected to have that surgery performed. He successfully underwent surgery on October 15, 1991.[1]
14. On September 24, 1991, Perrelli was involved in another motor vehicle accident where he was rear-ended. He sought treatment from Mankus complaining of pain and tenderness and limitation of motion of his neck, mid-back and back. Physical therapy and medications were prescribed. Perrelli treated with Mankus on approximately 41 occasions between November 1991 and January 1995 for complaints alleged to have arisen as a result of the September 24, 1991 accident.
15. Perrelli treated with Mankus on approximately 23 occasions between June 1991 and January 1996 for complaints alleged to have arisen as a result of the June 6, 1991 accident.
16. On at least seven occasions, Mankus issued identical reports attributing the cause of Perrelli's symptoms to the June 6, 1991 and September 24, 1991 accidents,[2] respectively.
17. In November, 1991, Perrelli began collecting unemployment compensation benefits, having held himself out as ready, willing and able to work.
18. On May 22, 1992, Mankus issued a report indicating that Perrelli had reached maximum medical benefit with respect to the June 6, 1991 accident. The report indicates that as of an office visit on April 15, 1992,[3] Perrelli continued to have occasional headaches, neck pain and low back pain and diagnosed Perrelli with post-traumatic headaches, cervical musculoligamentous sprain and lumbosacral musculoligamentous sprain. Without explanation, Mankus gave Perrelli a 10% permanent partial disability rating of his neck and lumbar spine. With respect to the September 24, 1991 accident, Mankus issued a report on March 2, 1994 indicating that Perrelli had reached maximum medical improvement. The report states that as of an office visit on February 15, 1994, Perrelli reported no significant change in his condition and that he was still having daily neck and low back CT Page 2586 pain. Mankus diagnosed Perrelli with lumbar musculoligamentous sprain and cervical musculoligamentous sprain but gave no additional disability ratings due to pre-existing injuries.
19. In September 1981, Perrelli sustained an injury to his low back and had disc surgery. He was assigned a 10% permanent partial disability to his low back at that time.
20. In December 1986, Perrelli was injured at work due to lifting heavy objects. He reached maximum medical improvement in 1990. He stipulated to a permanent partial disability rating of 15% to the neck and 20% to the lumbar spine at that time.
21. Following his aneurysm surgery, Perrelli complained about headaches to his neurosurgeon, Dr. Dickey, who referred him to Dr. Arnold Kriegstein ["Kriegstein"] for an evaluation of the headaches. Perrelli told Kriegstein that he was thrown against the windshield in the June 6, 1991 motor vehicle accident. Perrelli did not report the September 24, 1991 accident to Kriegstein nor did he report any history of migraine headache, when, in fact, he had been treated for migraines and reported a history of migraines to Dr. Scheer in 1988. Based on the facts as reported by Perrelli, Kriegstein suspected post traumatic migraine syndrome. The headaches improved over time after Kriegstein prescribed amitriptyline. By May 8, 1992, the headaches were improving and responded to treatment with aspirin or naprosyn. Perrelli subsequently complained to Kriegstein about a loss of smell, which Kriegstein also attributed to the June 6, 1991 motor vehicle accident because he believed it involved frontal head trauma. On May 26, 1992, Kriegstein issued a report which stated that Perrelli's loss of sense of smell is 100% and is a permanent disability. His head pain is a 20% permanent disability." There was no explanation given for these opinions.
22. Dr. James Donaldson, a neurologist, reviewed Perrell's records for the defense. In his opinion, Perrelli's loss of smell was related to direct damage to his olfactory nerves during the aneurysm surgery. According to the AMA Guidelines, a 100% loss of sense of smell would be rated as up to a 5% permanent partial disability of the whole person. In Donaldson's opinion, it is not probable that Perrelli's headaches are related to the June 6, 1991 motor vehicle accident and he is unaware of how Kriegstein came up with a 20% permanent disability rating.
23. Perrelli introduced into evidence medical bills for the CT Page 2587 emergency services received on June 6, 1991 (exhibit F), for x-rays, an office visit on June 17, 1991 with Dr. Bradburn and a replacement pair of sunglasses (exhibit J), for treatment with Dr. Mankus (exhibit K), and for treatment with Dr. Kriegstein (exhibit L-1).
24. Perrelli testified that the accident of June 6, 1991 "put a damper on his lifestyle." He claims his injuries have restricted his ability to participate in softball, although he admits that he has continued to play and that the changes in the way he participates could be due simply to his age.
CONCLUSIONS
1. The plaintiff has proven by a fair preponderance of the evidence that the defendant was negligent in failing to keep a proper and reasonable lookout and in executing an improper turn under the circumstances existing at the time of this accident on June 6, 1991.
2. The defendant has failed to prove by a fair preponderance of the evidence that the plaintiff was negligent.
3. The defendant's negligence was the proximate cause of physical injury to the plaintiff specifically cervical musculoligamentous sprain, lumbosacral musculoligamentous sprain, multiple lacerations, bilateral wrist sprain, bilateral ankle sprain and post traumatic syndrome. Among the plaintiff's symptoms were headaches, neck and back pain, and sleeplessness.
4. As of June 6, 1991, the plaintiff had a pre-existing disability of his neck and low back. The disability rating that Dr. Mankus gave to the plaintiff in connection with the June 6, 1991 accident is lower than his pre-existing disability ratings of the same area and does not take the pre-existing disability into account. There was no evidence that the pre-existing disabilities of the neck and low back were aggravated by the June 6, 199 accident.
5. Any treatment rendered to plaintiff by Dr. Mankus after September 24, 1991 cannot be fairly attributed to the June 6, 1991 accident. The seven identical reports issued by Dr. Mankus concerning the accidents of June 6, 1991 and September 24, 1991 are troubling and lead to the conclusion that the plaintiff over treated for the June 6, 1991 accident with Dr. Mankus. CT Page 2588
6. The plaintiff sought and received treatment for claims of persistent headache since the June 6, 1991 accident from Dr. Kriegstein. The court does not credit Dr. Kriegstein's opinion that the headaches were post traumatic migraines in that Dr. Kriegstein was unaware of a pre-accident history of headache, including migraines and was unaware of the September 24, 1991 accident, among other things. Likewise, the court rejects Dr. Kriegstein opinion relating the plaintiff's loss of sense of smell to the June 6, 1991 for the same reason. Further, the court rejects the 20% rating for head pain given by Dr. Kriegstein for lack of any foundation for that opinion. Nonetheless, the court concludes that, to a certain extent, the plaintiff has suffered from chronic, persistent headaches since the June 6, 1991 accident, but that they respond well to treatment.
7. The plaintiff was unable to return to work due to the motor vehicle accident of June 6, 1991. The court will not attribute any lost wages subsequent to September 24, 1991 to this accident.
8. The plaintiff incurred the following medical expenses as a result of the June 6, 1991 accident: emergency services received on June 6, 1991 (exhibit F), x-rays, an office visit on June 17, 1991 with Dr. Bradburn and a replacement pair of sunglasses (exhibit J), treatment with Dr. Mankus between June 6, 1991 and September 24, 1991 (exhibit K), and treatment with Dr. Kriegstein (exhibit L-1).
9. The court awards damages as follows:
Economic Damages: $12,745.00
Non-Economic Damages: $5,000.00
Total Damages: $17,745.00
Judgment shall enter in the plaintiff's favor.
Linda K. Lager, Judge